Opinión disidente emitida por la
Juez Asociada Señora Ro-dríguez Rodríguez,
a la que se une el Juez Presidente Señor Hernández Denton.
Disiento del curso de acción seguido por la mayoría en el presente caso por entender que el procedimiento adminis-trativo de impugnación de liquidación final de remesas municipales celebrado por el Centro de Recaudación de In-gresos Municipales a petición del municipio de San Juan satisfizo las exigencias del debido proceso de ley. Consi-dero, además, que el criterio mayoritario se ampara en una interpretación acomodaticia de los hechos que suscitan la controversia ante nuestra consideración.
Por lo anterior, y toda vez que no considero que los he-chos que sirven de trasfondo a esta controversia se encuen-tren resumidos adecuadamente en la ponencia mayorita-ria, entiendo necesario y pertinente exponer los hechos materiales y procesales en su totalidad, según surgen de los autos del caso.
*184 I
El 12 de julio de 2005 el municipio de San Juan (Muni-cipio) presentó dos recursos de apelación ante el Centro de Recaudación de Ingresos Municipales (C.RJ.M.) al amparo del Reglamento sobre el Procedimiento Adjudicativo Dispo-nible a los Municipios para Cuestionar las Liquidaciones Finales Anuales de las Remesas del C.RJ.M., Reglamento Núm. 6968 de 4 de mayo de 2005 (Reglamento Núm. 6968).(1) En el primero de los recursos, el Municipio alegó que el C.R.I.M. le había notificado e intentado cobrar ile-galmente una deuda ascendente a $27,456,900.87 por re-mesas adelantadas en exceso durante los años fiscales 1998-1999 y 1999-2000. Sostuvo que el C.R.I.M. no había podido evidenciar cómo calculó dicha deuda ni le había brindado el balance de la misma certificado y auditado por contables externos. Alegó que el C.R.I.M. —de forma unilateral y discriminatoria— había comenzado a descontarle en julio de 2002 $2,288,075.10 de su remesa mensual para abonar al pago de la deuda en controversia, lo cual conllevó que el Municipio se viera en la obligación de acogerse al préstamo autorizado por la Ley Núm. 42 de 26 de enero de 2000 para financiar la misma. 21 L.P.R.A. sees. 5821-5831. El Municipio solicitó que se ordenara al C.R.I.M. saldar el referido empréstito y reembolsarle los intereses por los pa-gos realizados hasta el momento.
En el segundo de sus recursos, el Municipio planteó que el C.R.I.M. había calculado incorrectamente sus ingresos por la contribución sobre la propiedad correspondientes al *185 año fiscal 2003-2004. Específicamente, alegó que el C.R.I.M. le adeudaba $6,000,000 en dicho concepto y soli-citó que se ordenara al C.R.I.M. pagarle dicha cantidad.
Estando ante su consideración dichos asuntos, el C.R.I.M. ordenó la consolidación de ambos recursos y la corrección de varios errores en su presentación. En cumpli-miento de dicha orden, el Municipio procedió a presentar sus argumentos en una sola moción en la que solicitó como remedio el pago de una suma total ascendente a $33,456,900.87. Incluyó con su petición la evidencia docu-mental en apoyo a sus contenciones.
En una posterior moción, el Municipio solicitó que, una vez nombrado el oficial examinador que atendería el pro-cedimiento, ordenara al C.R.I.M. descubrir prueba relacio-nada con los criterios y métodos utilizados para calcular los ingresos municipales. También requirió acceso al sis-tema de almacenamiento de datos del C.R.I.M. y a las per-sonas con el conocimiento sobre la información relevante a la controversia. Fundamentó esta última solicitud en el he-cho de que un informe de auditoría realizado en el 2001 había concluido que no era posible identificar el flujo de la fuente de ingresos del C.R.I.M. para los años fiscales 1998-1999 y 1999-2000 con el fin de constatar la corrección del cálculo de los ingresos del Municipio para dichos años fiscales. Finalmente, el Municipio solicitó que se ordenara al C.R.I.M. descubrir la prueba solicitada y citar a los fun-cionarios y ex funcionarios que pudieran informar sobre el proceso de almacenamiento de datos para los años fiscales en controversia. Solicitó, además, la celebración de una conferencia con antelación a vista y, posteriormente, una “vista evidenciaría”.
El C.R.I.M., por su parte, se opuso a la solicitud del Municipio mediante la presentación de su alegato. Argüyó que el Reglamento Núm. 6968, supra, no proveía para la aplicación de las Reglas de Procedimiento Civil o de Evi-dencia, salvo en circunstancias en que se estimara necesa- *186 rio para lograr los fines de la justicia. Sostuvo que la infor-mación proporcionada al Municipio con anterioridad al inicio del procedimiento administrativo y la que el C.R.I.M. produciría en apoyo a sus planteamientos sería suficiente para litigar la controversia sin la celebración de una vista evidenciaría. Específicamente, el C.R.I.M. adujo que a pe-sar de que el informe de auditoría de 2001 no hubiera po-dido identificar el flujo de la fuente de ingresos para los años fiscales 1998-1999 y 1999-2000, los estados financie-ros del C.R.I.M. para dichos años —incluso la liquidación final de las remesas municipales— habían sido auditados por una firma de contables externa. Es decir, que en su momento las liquidaciones finales de remesas fueron audi-tadas por una firma de contables externa.
En relación con las alegaciones del Municipio en torno a sus ingresos para el año fiscal 2003-2004, el C.R.I.M. sos-tuvo que como resultado de los cómputos finales auditados, se le habían remitido al Municipio $2,603,085.23 como complemento a las remesas enviadas para dicho año fiscal. Alegó el C.R.I.M. que toda vez que el Municipio no había presentado prueba fehaciente en apoyo a sus alegaciones de que el cálculo efectuado por el C.R.I.M. de su ingreso anual era incorrecto, procedía la desestimación de las ape-laciones presentadas.
Así las cosas, mediante una tercera solicitud de revisión de liquidación final, el Municipio impugnó la notificación del C.R.I.M. a los efectos de que éste debía $5,833,589.95 por remesas enviadas en exceso durante el año fiscal 2004-2005. Nuevamente, el Municipio alegó que el C.R.I.M. no le había proporcionado la información relativa a la manera de realizar el cálculo de la deuda ni le había demostrado a qué respondía la disminución de los ingresos del Municipio para dicho año fiscal, en base a los cuales se calcula el monto de sus remesas. Sometió con su solicitud los docu-mentos relacionados con la controversia.
En oposición, el C.R.I.M. alegó que de los propios docu-mentos presentados por el Municipio surgía que le había *187 proporcionado a éste toda la información respecto a la li-quidación final de la remesa correspondiente al año fiscal 2004-2005. Enfatizó que la propia ley habilitadora del C.R.I.M. dispone las fórmulas y los procedimientos para el cálculo de las remesas anuales y que el Municipio, contra-rio al reglamento aplicable, no había detallado el cálculo de la remesa que a su entender era el correcto.
Una vez más el Municipio solicitó que se ordenara al C.R.I.M. proporcionarle los documentos utilizados para el cálculo de la deuda. Pidió, además, la comparecencia de funcionarios y ex funcionarios encargados del almacena-miento de datos en la dependencia así como la celebración de una vista evidenciaría. El C.R.I.M. se opuso a la moción y alegó que la Ley de Procedimiento Administrativo Uni-forme del Estado Libre Asociado de Puerto Rico (Ley de Procedimiento Administrativo Uniforme o L.P.A.U.), Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sees. 2101-2201), no exige la celebración de una vista en todo proce-dimiento administrativo. Añadió que tampoco procedía la aplicación de las Reglas de Procedimiento Civil ni de Evi-dencia al procedimiento en controversia y que toda la in-formación pertinente había sido proporcionada al Munici-pio según se desprendía de los documentos presentados por este último en apoyo a su solicitud de revisión de liquida-ción final.
Así las cosas, la oficial examinadora consolidó la última petición de impugnación de liquidación final de remesa del Municipio de San Juan con las anteriores. Además, declaró sin lugar las solicitudes de celebración de vista presenta-das por el Municipio. Fundamentó su determinación en que la Ley de Procedimiento Administrativo Uniforme no requiere la celebración de una vista y el Reglamento sobre el Procedimiento Adjudicativo Disponible a los Municipios para Cuestionar las Liquidaciones Finales Anuales de las Remesas del C.R.I.M. tampoco provee para la misma. En-fatizó que el reglamento dispone para la presentación de *188 evidencia documental que deberá acompañarse con la pe-tición del municipio solicitante.
En su resolución, sin embargo, la oficial examinadora se reservó la potestad de solicitar información adicional a las partes de acuerdo con sus prerrogativas. Así, en efecto, lo hizo mediante una orden emitida el 13 de marzo de 2006 en la que solicitó a ambas partes información adicional so-bre la controversia. En lo pertinente al recurso ante nues-tra consideración, la oficial examinadora solicitó al C.R.I.M. que detallara el procedimiento para la estimación de los ingresos municipales para los años en controversia, en base al cual se determinaron las remesas del Municipio de San Juan. También solicitó el detalle del procedimiento empleado por el C.R.I.M. para notificar a los municipios la proyección de dichos ingresos. Además, la Oficial Examina-dora requirió acceso a las auditorías externas realizadas a la liquidación de las remesas en controversia.
Habiendo cumplido el C.R.I.M. con la orden y con el beneficio de los alegatos y la evidencia documental presen-tada por las partes, la oficial examinadora emitió un in-forme en el cual concluyó que el C.R.I.M. había actuado correctamente al realizar las liquidaciones finales de las remesas impugnadas por el Municipio. La oficial examina-dora determinó que, según surgía del expediente, el C.R.I.M. produjo —en el curso de las conversaciones ante-riores al inicio del procedimiento administrativo— toda la información solicitada por el Municipio. Dicha entidad ade-más había notificado al Municipio —conforme a la ley— los estimados de ingresos de los años en controversia a base de los cuales se calcula la remesa mensual de los municipios. El examen de estos últimos reveló que fueron preparados correctamente según los parámetros de contabilidad apli-cables, en ocasiones incluso reflejando una desviación favorable para los municipios.
La Oficial Examinadora estableció, además, que una vez realizado el ejercicio de estimación de ingresos a base *189 de los parámetros establecidos por la Junta de Gobierno del C.RJ.M., el cálculo de las cantidades a ser remesadas a los municipios es un ejercicio aritmético verificable por terceros. Luego de detallar la manera de hacer el cómputo de dichas remesas según los parámetros contenidos en la ley orgánica del C.R.I.M., y de revisar los estimados de ingresos, los informes de liquidaciones finales y las audito-rías realizadas, la oficial examinadora concluyó que las ac-tuaciones del C.R.I.M. no habían sido arbitrarias o caprichosas. Por último, la oficial recomendó al C.R.I.M. adoptar un documento oficial con la fórmula para la esti-mación de ingresos base para el cálculo de las remesas como mecanismo para disipar las dudas de los municipios relacionadas al procedimiento.
Cabe señalar que la oficial examinadora aclaró que no consideró las alegaciones del Municipio de San Juan en torno a la ineficiencia del C.R.I.M. en el cobro de cuentas morosas o el supuesto discrimen mostrado por dicha enti-dad contra el Municipio por no estar las mismas dentro del ámbito de revisión provisto por el reglamento aplicable. Anejó a su informe toda la documentación utilizada al rea-lizar su determinación según ésta había sido sometida por ambas partes.
El Director Ejecutivo del C.R.I.M. adoptó en su totali-dad el informe de la Oficial Examinadora y, en consecuen-cia, confirmó las liquidaciones finales de las remesas anua-les del Municipio realizadas por dicha entidad para los años en controversia. Inconforme con dicha determinación y luego de agotada la vía de la reconsideración, el Munici-pio solicitó revisión de la misma ante el Tribunal de Apelaciones. Señaló que la agencia recurrida había errado al determinar que los cálculos de ingresos municipales ha-bían sido explicados con pruebas suficientes y al negarse a permitir descubrimiento de prueba o desfile de prueba tes-tifical, violando así el debido proceso de ley del Municipio.
El foro apelativo intermedio concluyó que a pesar de que *190 la L.P.A.U. no exige la celebración de una vista evidencia-ría en los procedimientos adjudicativos ante agencias ad-ministrativas, las circunstancias particulares del presente caso ameritaban su celebración. Por tal razón, revocó la determinación administrativa y devolvió el caso para la reanudación de los procedimientos ante el C.R.I.M.
En desacuerdo con tal determinación, el C.R.I.M. acudió ante este Foro mediante recurso de certiorari y solicitud urgente de auxilio de jurisdicción. Señaló que el Tribunal de Apelaciones erró al concluir que el C.R.I.M. había abu-sado de su discreción al no celebrar una vista evidenciaría y al sostener que las particularidades del presente caso ameritan la celebración de la misma a pesar de que la L.P.A.U. no la requiere.
El 17 de enero de 2007 expedimos el auto y hoy una mayoría de este Tribunal resuelve que la agencia recu-rrente estaba obligada a autorizar la utilización de los me-canismos de descubrimiento de prueba y a celebrar una vista evidenciaría “formal”. Su conclusión parte de la pre-misa errónea de que el procedimiento administrativo con-ducido en el presente caso fue iniciado por la agencia recurrente. De esa manera, razona la mayoría, procedían las solicitudes de descubrimiento de prueba del Municipio al amparo de las disposiciones de la Sección 3.8 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. see. 2158(a). En segundo lugar, la mayoría concluye que por estar envuelto en el presente caso un “interés guberna-mental legítimo” del Municipio, procedía la celebración de una vista evidenciaría en la que éste pudiera presentar la evidencia documental, pericial y testifical que entendiera pertinente. Antes de atender tales conclusiones, expone-mos el derecho aplicable a la controversia ante nuestra consideración.
*191 II
A. El Centro de Recaudación de Ingresos Municipales fue creado mediante la Ley Núm. 80 de 30 de agosto de 1991 con el propósito de recaudar, recibir y distribuir los fondos públicos provenientes de distintas fuentes especifi-cadas en la ley entre los municipios. 21 L.RR.A. see. 5802. Véase, además, el Art. 16 de la ley orgánica del C.R.I.M., 21 L.P.R.A. see. 5815, para el detalle de los fondos que deben ser transferidos a los municipios anualmente. Según dispone la ley, el C.R.I.M. tiene la obligación de conceder anticipos mensuales de tales fondos a los municipios en la forma dispuesta en el propio estatuto. 21 L.P.R.A. see. 5803(i).
En particular, el Art. 18 establece en qué consisten dichas remesas mensuales y los parámetros para su transferencia. 21 L.P.R.A. see. 5817. En lo pertinente a la presente controversia, el inciso (d) de dicho artículo esta-blece que el C.R.I.M. esterá obligado a efectuar cada año una liquidación final de los fondos distribuidos a los muni-cipios mediante remesas mensuales.(2) En caso de existir algún exceso de recaudos en favor del municipio, se le re-mesará la cantidad que le corresponda de acuerdo con los factores establecidos en el inciso (c) del Art. 18. 21 L.P.R.A. sec. 5817(d). De igual manera, en el caso de que se le haya remesado a los municipios alguna cantidad en exceso, el Banco Gubernamental de Fomento —custodio de los ingre-sos municipales— será notificado de tal hecho para que proceda a retener de las remesas del siguiente año fiscal aquellas cantidades necesarias para recuperar las sumas remitidas en exceso. íd. Es decir, la propia ley orgánica del *192 C.R.I.M. autoriza la deducción de las cantidades adelanta-das en exceso de las remesas municipales del siguiente año fiscal.
Ahora bien, la Ley Núm. 42 de 26 de enero de 2000 autorizó al C.R.I.M. a gestionar y obtener un empréstito en forma de línea de crédito para, entre otros fines, atender la deuda acumulada por los municipios hasta el 30 de junio de 2001 por remesas enviadas en exceso. 21 L.RR.A. see. 5821. Ello según las liquidaciones finales auditadas y cer-tificadas por auditores independientes del C.R.I.M. Id. Así, a los municipios que se acogieran a los beneficios de este empréstito se les deduciría de las remesas mensuales la cantidad equivalente al pago de principal e interés de la deuda amortizada. En el caso contrario, aquellos munici-pios que decidieran no acogerse a los beneficios de dicho financiamiento vendrían obligados a pagar la totalidad de la deuda notificada durante el año fiscal. 21 L.P.R.A. see. 5827.
La Ley Núm. 42 dispuso, además, el procedimiento que deberían realizar los municipios para acogerse voluntaria-mente a los beneficios de dicho financiamiento. 21 L.RR.A. see. 5823. Según surge de la ley, la decisión sobre si aco-gerse o no al mismo la realiza cada municipio por conducto de su Asamblea Legislativa y su alcalde. Es decir, el C.R.I.M. no interviene en dicha determinación.
Como adelantáramos en la relación de hechos, el Muni-cipio, en ejercicio de su prerrogativa, se acogió a los benefi-cios de este financiamiento en el curso del primer pleito judicial instado en contra del C.R.I.M. y que culminó en la adopción del Reglamento Núm. 6968, supra. Como resul-tado, el Municipio amortizó las deudas por remesas notifi-cadas por el C.R.I.M. para los años fiscales 1998-1999 y 1999-2000.(3) Sin embargo, se reservó el derecho de impug- *193 nar dichas deudas mediante el procedimiento administra-tivo dispuesto en el reglamento de reciente creación.
Por lo tanto, no cabe en el presente caso establecer como un hecho —según lo hace la mayoría— que el C.R.I.M. “obligó” al Municipio a tomar un préstamo al amparo de la Ley Núm. 42 cuando dicha decisión recaía únicamente en el ente municipal por conducto de su Asamblea Legislativa y su alcalde. Los descuentos realizados a las remesas del Municipio durante julio y agosto de 2002 estaban expresa-mente autorizados por la ley y no constituyeron un acto para “obligar” al Municipio a acogerse al financiamiento. Este último debe verse como una medida adoptada por el Municipio para amortizar su deuda por remesas adelanta-das en exceso a fin de evitar mayores desembolsos mien-tras se dilucidaba el procedimiento de impugnación de las liquidaciones finales.
B. Por otra parte, la Ley de Procedimiento Adminis-trativo Uniforme garantiza a las partes en un procedi-miento administrativo de naturaleza adjudicativa el dere-cho a la notificación oportuna de las querellas o reclamos en su contra, a presentar evidencia, a una adjudicación imparcial y a que la decisión sea basada en el expediente. 3 L.P.R.A. see. 2151. De esta manera, la L.P.A.U. incorpora las garantías mínimas del debido proceso de ley a los pro-cedimientos adjudicativos, toda vez que mediante éstos las agencias intervienen con los intereses propietarios y liber-tarios de las partes. Alamo Romero v. Adm. de Corrección, 175 D.P.R. 314 (2009). En este aspecto, anteriormente he-mos expresado que lo esencial al determinar si un procedi-miento administrativo es válido de acuerdo con el debido proceso de ley es que el mismo haya sido justo y equitativo. *194 López y otros v. Asoc. de Taxis de Cayey, 142 D.P.R. 109, 113 (1996).
En relación con la controversia específica ante nuestra consideración, la L.P.A.U. dispone que la determinación so-bre si celebrar una vista adjudicativa reside en la agencia y debe estar regida por su ley habilitadora. Véase 3 L.P.R.A. see. 2157. Véase, además, D. Fernández, Derecho adminis-trativo y Ley de Procedimiento Administrativo Uniforme, 2da ed. rev., Bogotá, Ed. Forum, 1993 pág. 309. Por lo tanto, para conocer si existe el requisito de celebrar una vista, se debe atender al estatuto orgánico de la agencia así como a los reglamentos internos aplicables. Fernández, op. cit., pág. 309. Habiendo examinado el primero, procedemos a exponer las disposiciones del Reglamento Núm. 6968, supra, relevantes a la presente controversia.
C. Como lo indica su título, el Reglamento Núm. 6968 crea el procedimiento adjudicativo mediante el cual los municipios pueden impugnar las liquidaciones finales anuales de sus remesas hechas por el C.R.I.M. Art. II, Re-glamento Núm. 6968, supra. El mismo fue adoptado al am-paro de la Ley de Procedimiento Administrativo Uniforme, y del Artículo 4 de la Ley Orgánica del C.R.I.M., 21 L.P.R.A. see. 5803. Este último dispone en su inciso (ñ) que el C.R.I.M. tendrá la facultad para prescribir reglas, regla-mentos y normas relacionadas con el cumplimiento de sus funciones y deberes, y para la ejecución de las leyes que administre. 21 L.P.R.A. see. 5803(ñ).
Según el procedimiento dispuesto en el Reglamento Núm. 6968, al instar su solicitud de revisión de liquidación final, el Municipio solicitante debe acompañar copia de “todo documento u otra evidencia que sirva de apoyo a sus argumentos”. Art. VI(C)(5), Reglamento Núm. 6968, supra. El municipio solicitante debe presentar, además, “una ex-plicación detallada de la manera de hacer la liquidación final anual, y los cálculos envueltos en la misma, que el Municipio solicitante entiende es la correcta”. Art. *195 VT(C)(4), Reglamento Núm. 6968, supra. Lo anterior, sin perjuicio de que el oficial examinador le requiera informa-ción adicional o aclaratoria pertinente a la resolución de la controversia. Id. De igual manera, el C.R.I.M. deberá acompañar con su alegato copia de todo documento que apoye sus argumentos. Art. VII(D), Reglamento Núm. 6968, supra.
El reglamento establece, además, que las Reglas de Pro-cedimiento Civil y de Evidencia no serán de estricta apli-cación al procedimiento adjudicativo sino en la medida en que el foro administrativo lo estime necesario para llevar a cabo los fines de la justicia. Art. VI(D)(2), Reglamento Núm. 6968, supra. Nada se especifica en relación con la celebración de vistas evidenciarias.
III
Según se desprende de la relación de hechos precedente, y contrario a lo consignado por la mayoría, el procedi-miento administrativo cuya validez está ante nuestra con-sideración fue iniciado por el Municipio de San Juan al presentar sus escritos de apelación al amparo del citado Reglamento Núm. 6968, el cual fue adoptado, dicho sea de paso, como producto de su reclamo judicial a tales efectos. No puede ser otra la conclusión cuando el propio Regla-mento establece en su Art. VI(B) que: “El procedimiento adjudicativo para cuestionar la liquidación final anual de las remesas correspondientes a un Municipio ante el CRIM se iniciará con la presentación de una solicitud por escrito dirigida al Director Ejecutivo del CRIM.” (Énfasis nuestro.) La letra del citado reglamento es clara y no da lugar a otra conclusión. El procedimiento adjudicativo ce-lebrado por el C.R.I.M. en el presente caso fue iniciado por el Municipio al presentar sus “apelaciones” ante dicho or-ganismo con el fin de cuestionar las liquidaciones finales *196 anuales de sus remesas. Sobra establecer que, como conse-cuencia de lo anterior, no procede la aplicación de la por-ción de la See. 3.8 de la L.P.A.U. a la que la mayoría brinda tanto énfasis al resolver que por ser éste un procedimiento iniciado por la agencia administrativa, procede garanti-zarle al Municipio la utilización de los mecanismos de des-cubrimiento de prueba.
En segundo lugar, la mayoría asevera que, por el Muni-cipio ostentar “un interés gubernamental legítimo” en re-lación con sus remesas mensuales, procede la celebración de la vista evidenciaría que solicitara. No tenemos reparos en reconocer al Municipio un interés legítimo en el monto de sus remesas mensuales. De hecho, así lo concluyó el Tribunal de Apelaciones en el curso del primer procedi-miento habido entre las partes al ordenar al C.R.I.M. adop-tar el reglamento aplicable a la presente controversia para salvaguardar los intereses de la entidad municipal. Ahora bien, según surge del marco legal precedente, ni la ley or-gánica del C.R.I.M. ni el reglamento administrativo aplica-ble reconocen el derecho a la celebración de una vista en el procedimiento instado por un municipio para impugnar la liquidación final de sus remesas. Debemos auscultar, por lo tanto, si el procedimiento celebrado en el presente caso cumple con las exigencias del debido proceso de ley. Esto es, si el mismo, a fin de cuentas, fue justo y equitativo a pesar de la negativa de la agencia a celebrar una vista.
Del expediente se deriva que en el trámite administra-tivo de la presente controversia, tanto el Municipio como el C.R.I.M. produjeron múltiples documentos que, a su vez, fueron considerados en la adjudicación de la controversia y anejados al informe emitido por la oficial examinadora. De particular importancia resulta que obran en el expediente los detalles de las liquidaciones finales para los años fisca-les en controversia(4) También surge que el C.R.I.M. *197 brindó acceso a los informes de las auditorías realizadas a dichas liquidaciones finales.
Además de lo anterior, ante las mociones en solicitud de celebración de vista evidenciarla y descubrimiento de prueba del Municipio, la Oficial Examinadora ordenó al C.R.I.M. producir la prueba solicitada por el Municipio, a saber, la descripción del método y los parámetros utiliza-dos por el C.R.I.M. al realizar los estimados de ingresos del Municipio. Dicha orden fue cumplida por el C.R.I.M.
De otra parte, el informe emitido por la oficial examina-dora y posteriormente adoptado por el director ejecutivo del C.R.I.M. es exhaustivo. Primeramente, éste describe los hechos de los cuales surge la controversia y cada uno de los estatutos aplicables a la misma. Posteriormente, brinda una explicación pormenorizada de la manera de realizar el cálculo de las remesas municipales basándose en los parámetros y en las fórmulas contenidas en la Ley Orgánica del C.R.I.M., según enmendada. El informe ex-pone a qué se debe la variación en los ingresos del Munici-pio de San Juan basado en las fórmulas contenidas en la ley y en la documentación producida por las partes. A lo anterior debemos añadir el hecho de que la oficial exami-nadora consideró todos los planteamientos del Municipio susceptibles de resolución al amparo del Reglamento Núm. 6968, supra.
En su alegato, el Municipio reproduce argumentos que ha esgrimido ante los foros adjudicativos que han interve-nido en las diferentes etapas de este pleito. Enfatiza el hecho de que una auditoría realizada en el año 2001 no pudo identificar el flujo de la fuente de ingresos reconoci-dos y atribuidos a los municipios por el C.R.I.M. para los años 1998-1999 y 1999-2000 con el fin de comprobar la corrección del cálculo de las remesas del Municipio para dichos años en controversia. (5) Sin embargo, como ha que *198 dado evidenciado, dichas determinaciones de ingresos —incluso la liquidación de las remesas anuales del Muni-cipio— en su momento fueron auditadas por una firma externa.
En relación con la carencia de una auditoría indepen-diente de las liquidaciones finales, la oficial examinadora correctamente concluyó que para los años fiscales 1998-1999 y 1999-2000, el C.R.I.M. no tenía la obligación de realizarlas. Dicha obligación fue impuesta por la Ley nú-mero 104 de 15 de agosto de 2001 a partir del año de su aprobación, 21 L.RR.A. secs. 5806(k) y 5808(v). Además, la auditoría comisionada por el C.R.I.M. en el 2001 tuvo como consecuencia un ajuste a favor del Municipio de San Juan por las remesas correspondientes a los años fiscales 1998-1999 y 1999-2000. En suma, no erró la agencia administra-tiva al confirmar la liquidación final para dichos años fis-cales basándose en el informe de auditoría realizado a las mismas.
El Municipio también argumenta que se le violó el de-bido proceso de ley al negársele los procedimientos forma-les de descubrimiento de prueba. Sin embargo, como sabe-mos, los mecanismos de descubrimiento de prueba por lo general no son de aplicación en el contexto de adjudicación administrativa, a menos que el reglamento de la agencia y el funcionario que presida el procedimiento los autoricen. 3 L.P.R.A. see. 2158.
En este aspecto, el Reglamento Núm. 6968, supra, esta-blece el derecho de las partes a presentar toda la evidencia documental pertinente a la controversia. La Oficial Exami-nadora, por su parte, utilizó la facultad que le confiere el referido reglamento para obtener la información solicitada por el Municipio relacionada con los procesos de cálculo de ingresos del C.R.I.M. Esto es, por otra vía, el Municipio advino en conocimiento de la información solicitada.
De acuerdo con la mayoría, el Municipio se vio imposi-bilitado de presentar su propia evidencia pericial. Sin em *199 bargo, el expediente demuestra que el Municipio contó con la información que hubiera posibilitado a sus peritos emi-tir informes cuestionando los cálculos realizados por el C.R.I.M. A pesar de lo anterior, el Municipio ni siquiera presentó el que a su entender era el cálculo correcto de las remesas. Ello en incumplimiento de las disposiciones del reglamento aplicable. Nótese que, una vez realizado el es-timado de ingresos de cada municipio, el cálculo de las re-mesas correspondientes es un ejercicio aritmético verifica-ble, por lo cual nada impedía que el Municipio presentara el que a su entender era el cálculo correcto.(6)
Por último, considero indispensable hacer referencia a las desafortunadas expresiones de la mayoría en relación con el supuesto trato preferencial demostrado por el C.R.I.M. ante el Municipio de Ponce en comparación con el municipio aquí recurrido. Como bien indicó la oficial exa-minadora en su informe, dicha alegación estaba fuera de las facultades de revisión que le confería el Reglamento Núm. 6968, supra, por lo cual se encontraba imposibilitada de considerarla. En consecuencia, el asunto no pasa de constituir una mera alegación de la parte recurrida, y por no haber sido objeto del procedimiento administrativo, nos vemos impedidos de atenderla.(7)
*200 En suma, entiendo que el procedimiento conducido ante el C.R.I.M. satisfizo los requerimientos del debido proceso de ley a pesar de la no celebración de una vista ante la agencia administrativa. Considero, además, que el Munici-pio de San Juan contó con la información necesaria para ejercer adecuadamente su derecho a impugnar la liquida-ción final de sus remesas. Erró el Tribunal de Apelaciones al concluir lo contrario y, en consecuencia, devolver el caso al foro administrativo. Por tal razón, revocaría la sentencia recurrida y reinstalaría la determinación emitida por el C.R.I.M. en el presente caso por estar sustentada en la evidencia sustancial obrante en el expediente adminis-trativo.

 Cabe señalar que este reglamento fue adoptado por el Centro de Recaudación de Ingresos Municipales (C.RJ.M.) como resultado de la sentencia dictada por el Tribunal de Apelaciones en un pleito judicial instado por el Municipio de San Juan en relación con los mismos hechos que dieron lugar a las apelaciones administrativas aquí reseñadas. El Reglamento Núm. 6968 fue enmendado posteriormente por el Reglamento Núm. 7052 de 15 de noviembre de 2005 con el único fin de aumentar el término jurisdiccional disponible a los municipios para iniciar el procedimiento de impugnación de la liquidación final de sus remesas de quince a sesenta días.

 La necesidad de efectuar una liquidación final responde a que las remesas se efectúan a base de estimados de los ingresos municipales. 21 L.P.R.A. see. 5815. Es decir, las remesas constituyen un anticipo de fondos por contribuciones futuras. Me-diante la liquidación final se determina, con el beneficio del ingreso real del munici-pio, si la remesa enviada a éste durante el año en cuestión corresponde a su ingreso real. Véase Art. IV(M), Reglamento Núm. 6968, supra.

 Una vez el Municipio de San Juan se acogió al financiamiento que la Ley Núm. 42 de 26 de enero de 2000 hizo viable, el C.R.I.M. le acreditó retroactivamente *193 las sumas que hasta el momento se le habían descontado por la deuda amortizada. Esto es, el C.R.I.M. le devolvió las sumas descontadas de sus remesas correspondien-tes a los meses de julio y agosto de 2002 como repago de la deuda acumulada por el Municipio de San Juan por remesas enviadas en exceso durante los años fiscales 1998-1999 y 1999-2000. En su lugar, el C.R.I.M. comenzó a descontarle al Municipio de San Juan la cantidad correspondiente según los términos del préstamo.

 Específicamente, obran en el expediente los informes de liquidación final correspondientes a los años fiscales 1998-1999, 1999-2000 y 2004-2005, según éstos fueron notificados por el C.R.I.M. al Municipio de San Juan.

 Esto es, que no se pudo seguir el rastro a los ingresos recaudados por el C.RJ.M. desde su recolección hasta su repartición entre los municipios.

 La mayoría alude al “cúmulo de incorrecciones” cometidos por el C.R.I.M. al calcular el monto de las remesas del Municipio de San Juan sin especificar en qué consiste la misma.

 Ahora bien, por la seriedad de dichas imputaciones, entendemos pertinente hacer constar que en el caso aludido, el Municipio de Ponce inició un procedimiento judicial el 1 de junio de 2000 para impugnar la liquidación de sus remesas efectuada por el C.R.I.M. Luego de varios eventos procesales, las partes acordaron que la causa se ventilaría administrativamente, por lo que suscribieron una estipulación en la cual pautaron la naturaleza del procedimiento administrativo al que se sometería la controversia. En el 2003, el C.R.I.M. dio por terminado dicho procedimiento por entender que la estipulación era nula pues consideraron que no procedía brindarle al Municipio de Ponce un procedimiento administrativo formal. El Tribunal de Primera Instancia rechazó tal contención y ordenó la continuación del procedimiento admi-nistrativo según acordado. No vemos entonces el trato discriminatorio al que alude la mayoría. Si bien en el caso del Municipio de Ponce se celebró un procedimiento administrativo en el cual el municipio tuvo la oportunidad de realizar descubri-miento de prueba, ello se debió a que así lo había acordado con el C.R.I.M. mediante *200 la estipulación que puso fin al proceso judicial y que los tribunales validaron, orde-nando al C.R.I.M. cumplir con la misma. Todo ello con anterioridad a la adopción del Reglamento Núm. 6968.